IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICIA MARSHALL
   *Plaintiff*,

v.

   Civil Action No. ELH-18-74

ANNE ARUNDEL COUNTY,
 MARYLAND
   *Defendant*.

**MEMORANDUM OPINION**

In a Second Amended Complaint (ECF 14, "SAC"), plaintiff Patricia Marshall alleges that her former employer, the Office of the State's Attorney for Anne Arundel County ("OSA" or the "Office"), discriminated against her on the basis of age and disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*; and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2014 Repl. Vol., 2018 Supp.), § 20-601 to § 20-610 of the State Government Article ("S.G."). She has sued Anne Arundel County, Maryland ("County"), which she maintains is functionally the same as the OSA. Marshall seeks compensatory damages, back pay, pre-judgment interest, and attorney's fees. ECF 14 at 14.[1]

The County has moved to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for pre-discovery summary judgment (ECF 15), supported by a memorandum of law (ECF 15-1) (collectively, the "Motion") and an exhibit. *See*

---

[1] Marshall filed her initial complaint without the assistance of counsel. *See* ECF 1. About two months later, she obtained counsel. He filed an Amended Complaint (ECF 7). Then, in response to a motion to dismiss (ECF 10), he filed a Second Amended Complaint. ECF 14.

ECF 15-2 ("Affidavit of Andrea M. Rhodes"). The County contends that the Office of the State's Attorney for Anne Arundel County is a State agency, not a local agency. Accordingly, the County submits that it was not plaintiff's employer and is therefore not the proper party to this suit. *See* ECF 15-1 at 5-10. Marshall opposes the Motion. ECF 17 ("Opposition"). The defendant filed a reply. ECF 18 ("Reply").

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual Background

In April 2015, Marshall began her employment with the OSA as a "Victim/Witness Advocate." ECF 14, ¶ 24. At all relevant times, she was over the age of forty years old and had an anxiety disorder as well as a heart condition, known as takotsubo cardiomyopathy. *Id.* ¶¶ 14-19.

Marshall was hospitalized for her heart condition on March 30, 2016. *Id.* ¶¶ 37-38. She "returned to work shortly thereafter with a doctor's note . . . requesting temporary light duty due to her disabilities." *Id.* ¶ 40. The Office granted her request. *Id.* ¶ 41.

After her light duty period ended, she experienced "spouts of dizziness" and "lapses in concentration." *Id.* ¶ 42. She also needed to walk slowly between courtrooms and the office. *Id.* ¶ 43. On June 6, 2016, she allegedly told her supervisor, Heather Amador, that "she was struggling with her caseload because of her heart condition." *Id.* ¶ 45. According to Marshall, she and Amador did not discuss accommodations for her disability. *Id.* ¶ 46.

On August 23, 2016, OSA "management" met with Marshall and told her that she would be placed on probation for a two-month period. *Id.* ¶ 48. Marshall advised that her heart condition was affecting her performance. *Id.* ¶ 50. And, the Office's Director of Human Resources, Lesley

Pattison, said that she agreed and that she believed Marshall's disability was "being caused by her job." *Id. ¶* 51.  Pattison also stated that "Marshall's job was too stressful and that she should find another job." *Id.* ¶ 52.  The SAC alleges that Marshall and the Office's management did not discuss accommodations for Marshall's disability.  *Id.* ¶ 53.

Marshall was terminated on September 9, 2016.  *Id.* ¶ 57.  Assistant State's Attorney Aaron Meyers allegedly told Marshall that he was terminating her because "she had been 'irritating him' through her requests for guidance." *Id.* ¶ 58.  Pattison was also present during Marshall's termination. *Id.* ¶ 61. According to the SAC, Pattison again told Marshall that the job was "too stressful for [Marshall's] disability." *Id.*

After the meeting, Pattison allegedly told Marshall "that she thought Marshall could live off her retirement" and that Marshall "should tell prospective employers about her young children to signal that despite her age, she is not planning to retire[.]" *Id. ¶¶* 68-69.  Pattison also "offered Marshall a temporary position as a receptionist through the end of the year with a reduction in salary[.]" *Id.* ¶ 62.  Marshall accepted the offer.  *Id.* ¶ 63.

In October 2016, Marshall twice requested an accommodation for her disability.  *Id.* ¶¶ 70, 72.  Pattison allegedly first refused to discuss the request and then claimed that "the demotion to the receptionist position '[] put into effect' her requested accommodation." *Id.* ¶¶ 71, 73.

Marshall continued working as the "Victim/Witness Advocate" until November 7, 2016, when she began her new position as a receptionist.  *Id.* ¶¶ 64, 76.  She alleges that she requested a meeting with Pattison that day to discuss her accommodation, but her request was ignored. *Id. ¶¶* 77-78.  She also alleges that she requested another meeting two weeks later. *Id.* ¶ 79.  Pattison

allegedly "responded but did not schedule any meeting to discuss [] Marshall's requested accommodation." *Id.* ¶ 80.

On December 22, 2016, Marshall accepted Pattison's offer to work through January 11, 2017. *Id.* ¶¶ 81-82. Marshall later declined an offer to extend her position through the end of January 2018. *Id.* ¶¶ 83-84.

To fill the now empty position of "Victim/Witness Advocate," the OSA hired Jesse Pugliese. She is allegedly in her early thirties and does not have a disability. *Id.* ¶¶ 65-67.

## II. Procedural Background

On November 30, 2016, Marshall filed a Charge of Discrimination and Retaliation ("Charge") with the Maryland Commission on Civil Rights (the "MCCR"), naming "Anne Arundel County State's Attorney's Office" as the respondent. *Cf.* ECF 1-1 at 1.[2] The Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC") as EEOC Charge No. 12F-2017-00168. ECF 14, ¶ 8. On October 12, 2017, the Department of Justice issued Marshall a Notice of Right to Sue ("Notice") the OSA. *Id.*; *see also* ECF 1-1 at 1.

On January 9, 2018, within 90 days of receipt of the Notice, Marshall, as a self-represented plaintiff, filed suit (ECF 1, the "Complaint") against Wes Adams, who was then the State's Attorney for Anne Arundel County; Meyers; Pattison; and the Anne Arundel County State's Attorney's Office. *See* ECF 1.[3] Marshall subsequently obtained counsel, ECF 4, and filed an

---

[2] The Commission was previously known as the Maryland Commission on Human Relations. During the 2011 legislative session, the Maryland General Assembly approved a change in the name; it is now known as the Commission on Civil Rights. *See* 2011 Md. Laws, Chap. 580; *see also Bd. of Directors of Cameron Grove Condo., II v. State Comm'n on Human Relations*, 431 Md. 61, 64 n.3, 63 A.3d 1064, 1066 n.3 (2013).

[3] Adams was defeated in the general election in November 2018. Plaintiff did not give formal notice under the Local Government Tort Claims Act, Md. Code (2013 Repl. Vol., 2018 Supp.), §§ 5–301 *et seq.* of the Courts and Judicial Proceedings Article, but claims that the

Amended Complaint against Anne Arundel County, removing the other defendants from the suit. ECF 7.[4]  With leave of Court (ECF 13), Marshall filed a Second Amended Complaint on April 30, 2018.  ECF 14.

Additional facts are included in the Discussion.

### III.    Standard of Review

As noted, defendant has moved to dismiss or, in the alternative, for summary judgment. ECF 15.  Along with its Motion, defendant submitted one exhibit (ECF 15-2), the affidavit of Andrea M. Rhodes, Anne Arundel County's Personnel Officer.

### A.

A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  When, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be

---

defendant is not prejudiced.  ECF 14, ¶ 10.  Defendant does not address the issue.  *See* ECF 14; ECF 18.

[4] Plaintiff maintains that she "renamed" the State's Attorney for Anne Arundel County in "the captioned proceeding as 'Anne Arundel County Government[.]'" ECF 17, ¶ 2.

on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Alan Wright & Arthur Miller et al., *Federal Practice & Procedure* § 1366 (3d ed.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Summary judgment is usually inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed

discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, ___ F.3d ___, 2019 WL 350375, at *6 (4th Cir. Jan. 29, 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at her peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561.  But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).  According to the Fourth Circuit, the failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the

functional equivalent of an affidavit.'" *Id*. at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Plaintiff has not filed an affidavit under Rule 56(d), but she has asserted that she would be prejudiced in the absence of discovery. Plaintiff contends that "the contours of Defendant's control over Plaintiff should be developed through discovery as the case proceeds." ECF 17 at 5. She characterizes the affidavit attached to defendant's Motion as "a blatant attempt to convert Defendant's motion into one for summary judgment without the benefit of discovery." ECF 17 at 5.

In *McCray v. Maryland Dept. of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014), the Fourth Circuit determined, *inter alia*, that the district court abused its discretion in dismissing an action before the plaintiff had an opportunity to conduct discovery in connection with a summary judgment motion under Fed. R. Civ. P. 56. *Id.* at 483. The *McCray* Court said, *id.*: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

Given the posture of this case, it is my view that the summary judgment motion is premature. Accordingly, I shall consider the Motion as a motion to dismiss.

**B.**

"In recent years, the Supreme Court repeatedly has cautioned courts not to 'confuse[ ] or conflate[ ]' subject-matter jurisdiction, on the one hand, with the 'essential ingredients of a federal claim for relief,' on the other." *Stewart v. Iancu*, 912 F.3d 693, 700 (4th Cir. 2019) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006)). Here, the parties dispute whether plaintiff exhausted the administrative processes under the ADA, the ADEA, and the MFEPA. As discussed, *infra*, the Fourth Circuit has "long held that receipt of, or at least entitlement to, a right-

to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. N. Carolina Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995) (citing *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir.1982)); *accord Iancu*, 912 F.3d at 700; *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty.*, MD, 523 F.3d 453, 459 (4th Cir. 2008). A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Clarke*, 962 F. Supp. 2d at 786 (quotation marks and citation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Kerns*, 585 F.3d at 192.

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Notably, the court may take judicial notice of the existence and contents of EEOC proceedings "if necessary to decide issues like exhaustion of administrative remedies[.]" *Clarke*, 962 F. Supp. 2d at 787. But, "it may not take judicial notice of the *truth* of matters outside the challenged pleading." *Id.* (emphasis in *Clarke*).

## C.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from

the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). But, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am.*

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

And, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As noted, the County submitted an affidavit (ECF 15-2) with its Motion. However, Marshall does not rely on this document in her Second Amended Complaint. Therefore, I may not consider it in the context of this Memorandum Opinion.

## IV. Discussion

The County maintains that Marshall fails to state a claim because the County was not her employer. ECF 15-1 at 5-10. The County also contends that Marshall has not exhausted her administrative remedies. *Id.* at 10-14. Finally, the County alleges that plaintiff's federal claims are time-barred because she did not lodge them against the County within 90 days of receiving the

Notice.  *Id.* at 14-15.

## A.  Joint Employer

Plaintiff brings claims under the ADA, ADEA, and MFEPA.  Title I of the ADA prohibits employers from discriminating "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112.  Similarly, MFEPA prohibits an employer from discharging an employee due to "the individual's . . . disability unrelated in nature and extent so as to reasonably preclude the performance of the employment[.]"  S.G. § 20-606(a)(1)(i); *see also Alexander v. Marriott Int'l, Inc.*, No. RWT–09–2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) (MFEPA "is the state law analogue of Title VII.").[5]  Additionally, the "ADEA makes it 'unlawful for an employer . . . to discharge any individual . . . because of such individual's age.'"  *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)).

An entity need not be a plaintiff's sole employer in order to be liable under the statues at issue.  Rather, under the joint employer doctrine, it may be a "joint employer" if it exercises sufficient control over the terms and conditions of the plaintiff's employment. *Butler*, 793 F.3d at 408; *Evans v. Maryland State Highway Admin.*, JKB-18-935, 2018 WL 4733159, at *5 (D. Md.

---

[5] Maryland courts interpreting MFEPA have often found federal cases arising under Title VII to be persuasive authority.  *See, e.g., Taylor v. Giant of Md., LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494, 578 A.2d 766, 772 (1990); *Md. Shipbuilding & Drydock Co., Inc. v. Md. Comm'n on Human Rel.*, 70 Md. App. 538, 545–50, 521 A.2d 1263, 1266 (1987); *Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 200 n. 8, 66 A.3d 1152, 1166 n. 8 (2013).  And, plaintiff has not asserted a distinction between her federal and State discrimination claims.  Accordingly, I will apply the same standards to my analysis of plaintiff's State and federal discrimination claims.  *See Blakes v. City of Hyattsville*, 909 F.Supp.2d 431, 444 (D. Md. 2012).

Oct. 2, 2018); *cf. Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 980 (4th Cir. 1983) (adopting the hybrid test in an ADEA independent contractor case).

Courts consider nine factors to determine whether an entity is a joint employer, *Butler*, 793 F.3d at 414:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

The Fourth Circuit noted in *Butler* that these factors are "not dispositive" and that control remains the "'principal guidepost' in the analysis." *Id.* at 414. Further, it stated that the first three factors, which are all related to control, are the most important. *Id.* at 414-15.

The County is not plaintiff's employer. The Office of the State's Attorney is a State office, not a local office. *See, e.g.*, *Murphy v. Yates*, 276 Md. 475, 488, 348 A.2d 837, 844 (1975) ("The Court of Special Appeals has recognized that the office of State's Attorney is a constitutional office.") (citing *State v. Aquilla*, 18 Md. App. 487, 493, 309 A.2d 44, 47 (1973); *State v. Hunter*, 10 Md. App. 300, 305, 270 A.2d 343, 345, *cert. denied*, 263 Md. 17, 278 A.2d 608 (1970)); *cf. Kronk v. Carroll Cty.*, BEL-11-0277, 2012 WL 245059, at *5 (D. Md. Jan. 25, 2012) (rejecting argument that defendants Carroll County and Carroll County Sheriff's Department are identical for purposes of being placed on notice of plaintiff's claims).

Similarly, under the Maryland Constitution, the State's Attorney for each county and Baltimore City is a constitutional officer of the State. *See* Md. Const., Art. 5, § 7. Indeed, it has been "squarely [held] that the State's Attorney is a state official under Maryland law." *Lowery v. Prince George's County, Md.*, 960 F. Supp. 952, 956 (D. Md. 1997) (quoting *Valle v. Pressman*, 229 Md. 591, 599, 185 A.2d 368, 374 (1962)) ("'[A] State's Attorney is a State rather than a local officer[.]'").

Nor is the OSA a subsidiary of the County. As defendant notes, the Office is not included in the County's Executive Branch. ECF 15-1 at 6-7; Anne Arundel County Code § 2-1-103. Rather, the County characterizes the Office of the State's Attorney as a "County-funded State agenc[y]." *Id.* § 2-1-103.

Nevertheless, the County may be Marshall's joint employer. According to the Second Amended Complaint, plaintiff submitted her employment application to the County, suggesting that Anne Arundel County played some role in the decision of the Anne Arundel State's Attorney to appoint her. ECF 14, ¶¶ 25-27. Moreover, the County allegedly paid plaintiff's salary and issued a W-2. *Id.* ¶¶ 30-31. The County is also required to "furnish[] the equipment used and the place of work" for the OSA, as well as financial support and support services. *Butler*, 793 F.3d at 414; *see* Md. Code (2018 Repl. Vol.), §15-407(b) of the Criminal Procedure Article ("C.P."). Additionally, pursuant to Anne Arundel County Code § 6-2-104(d), employees appointed by the State's attorney are entitled to the same employment benefits applicable to the County's classified employees. *See also id.* § 6-2-104(b) (setting the pay grade for "Victim/Witness Advocate," among other positions). Indeed, Marshall was enrolled in the County's retirement plan and healthcare benefits plan. ECF 14, ¶¶ 28-29.

Of import, the Maryland Court of Appeals has concluded that, although employees of a State's Attorney's office are State employees, a county may be a joint employer for the purpose of disputes over payment, such as claims brought under the Fair Labor Standards Act or the Maryland Wage and Hour Law. *Newell v. Runnels*, 407 Md. 578, 649, 967 A.2d 729, 771 (2009). The Maryland Court of Appeals relied on the economic reality test, which focuses on financing, not control.

Nevertheless, *Newell* highlights the way in which Caroline County used its control over funding to exert significant control over hiring and firing in the OSA for Caroline County. The court said, *id.* at 653-54, 967 A.2d at 774:

> Former State's Attorney Jensen stated . . . that the County exerted control over the hiring process in the [OSA], requiring that he get County permission for all new hires, even if the salaries of the hires fell within a given [OSA] budget allocation. He indicated that he had to follow the County's personnel "handbook" when hiring staff. If he wanted to fire an employee, he said he needed the County's permission.

Another former State's Attorney similarly "attested that the County stripped him of his right to hire a secretary for the Drug Task Force program, [and] effectively terminated the employment of an investigator by eliminating the investigator's position[.]" The county also allegedly used its control over funding to manage elements of the Office's day-to-day functions. For example, the same former State's Attorney also claimed that the county directed "the [OSA] to rely on the County police for its investigations." *Id.* at 654; 967 A.2d at 774.

The liberal construction typically afforded the ADA, the ADEA, and the MFEPA extends to the definition of employer. *Cf. Evans v. Maryland State Highway Admin.*, No. CV JKB-18-935, 2018 WL 4733159, at *6 (D. Md. Oct. 2, 2018) (quoting *Lee v. Mattis*, No. PX-17-2836, 2018 WL 3439261, at *9 (D. Md. July 17, 2018)) (" 'Title VII should be liberally construed in light of its remedial purpose,' and . . . this broad interpretation extends to the definition of 'employer[.]' ").

Plaintiff's allegations address several of the most important factors under the joint employer doctrine: the County played some role in her hiring; it paid her; and it furnished her place of employment. Plaintiff also addressed several other factors. Especially when taken in conjunction with *Newell*, the SAC allows at least a plausible inference that the County was plaintiff's joint employer.

## B. Exhaustion

The County claims that Marshall may not sue the County because she did not exhaust her administrative remedies as to the County. This is because she effectively named the State, and not the County, in her EEOC Charge. The County maintains that this mistake is inexcusable, as the County does not share a substantial identity with the OSA or the State. Therefore, the County contends that this Court lacks subject matter jurisdiction, due to failure to exhaust. ECF 15-1 at 10-11.

The ADA, the ADEA, and the MFEPA require a plaintiff to exhaust administrative remedies prior to filing suit in court. *See Parker v. Reema Consulting Servs., Inc.*, ___ F.3d ___, 2019 WL 490652, at *6 (4th Cir. Feb. 8, 2019) (Title VII); *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (concluding that the ADA requires administrative exhaustion before filing suit); *Johnson v. United Parcel Serv., Inc.*, No. CIV.A. RDB-14-4003, 2015 WL 4040419, at *6 (D. Md. June 30, 2015) (concluding that MFEPA requires administrative exhaustion prior to filing suit); *Calvert Grp.*, 551 F.3d at 300-01 (a plaintiff is required to exhaust administrative remedies before filing suit under the ADEA).

The ADA and the MFEPA incorporate the exhaustion procedures of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. §§ 2000e *et seq*. *Sydnor*, 681 F.3d at 593 ("[T]he ADA incorporates [Title VII's] enforcement procedures[.]") (internal citations omitted);

*Alexander*, 2011 WL 1231029, at *6 (calling MFEPA "the state law analogue of Title VII."); *see also* 42 U.S.C. § 2000e-5(f)(1) (2006) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter). And, for the purpose of this case, the ADEA's exhaustion requirements are not materially different from Title VII's requirements. *See* 29 U.S.C. § 626(d)(1); *Calvert Grp.*, 551 F.3d at 300-01 ("Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. The same is true of claims made under the ADEA.").

An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust her administrative remedies with the EEOC and is generally barred from filing suit. *See, e.g.*, *Balas*, 711 F.3d at 407; *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). In the Fourth Circuit, the exhaustion requirement of anti-discrimination statutes functions as a jurisdictional bar where a plaintiff has failed to comply with it. In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." Thus, a failure to exhaust administrative remedies generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005); *see also Miles*, 429 F.3d at 491 (The "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible.). Rather, together with the agency investigation and settlement process it initiates, the

requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).[6] "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor*, 681 F.3d at 593.

Ordinarily, suit under the ADA or ADEA may be brought "only 'against the respondent named in the [administrative] charge.'" *Alvarado v. Bd. of Tr's of Montgomery Cmty. Coll.*, 848 F.2d 457, 458 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(f)(1)). But, "[t]his [naming] requirement is not applied in a hyper-technical fashion . . . ." *Raiford v. Md. Dep't of Juvenile Servs.*, No. 12-3795, 2014 WL 4269076, at *6 (D. Md. Aug. 28, 2014) (quoting *Kronk v. Carroll Cty.*, No. 11-0277, 2012 WL 245059, at *5 (D. Md. Jan. 25, 2012)). Indeed, the Court is mindful that generally "'laypersons, rather than lawyers,'" are the ones who "initiate" the remedial process. *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (quoting *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988)). Moreover, the exhaustion requirement was not intended to create "insurmountable barriers" based on "overly technical concerns." *Sydnor*, 681 F.3d at 594.

Therefore, "'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *Alvarado*, 848 F.2d at 460 (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir. 1975)). And, the Fourth Circuit has recognized that there are circumstances when the naming requirement is not strictly enforced. *Alvarado*, 848 F.2d at 460-61; *see also Causey v. Balog*, 162 F.3d 795, 800 n.1 (4th Cir. 1998).

---

[6] For a description of the full process, *see Balas*, 711 F.3d at 407.

The purpose of the naming requirement is twofold. "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Alvarado*, 848 F.2d at 458-59. It is "designed to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints." *Id.* at 460.

To determine whether a civil action can be brought against a defendant not named in the EEOC charge, courts in this Circuit often rely on the "substantial identity test." *Elzey v. Wal-Mart Assocs.*, Inc., RDB-11-2151, 2012 WL 3715321, at *3 (D. Md. Aug. 28, 2012). To my knowledge, the Fourth Circuit has not formally adopted this test. But, it has commented on it favorably in dicta. *See Alvarado*, 848 F.2d at 461. Pursuant to the substantial identity test, courts address the following factors, *Vanguard Justice Soc. Inc. v. Hughes*, 471 F. Supp. 670, 687 (D. Md. 1979):

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and]
>
> 4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Accord Elzey*, 2012 WL 3715321, at *3. "Of these four factors, the second and third are the most important as they are most reflective of the two-fold purpose of the naming requirement." *Crosten v. Kamauf*, 932 F. Supp. 676, 682 (D. Md. 1996).

In *Alvarado*, 848 F.2d 457, the plaintiff initially filed an EEOC charge of discrimination that named "Montgomery Community College" as the respondent. *Id.* at 459. However, in the

civil suit later filed in federal court, the plaintiff named as defendants the "Board of Trustees of Montgomery Community College and the president of the college." *Id.* The Fourth Circuit determined that the change from "Montgomery Community College" to the "Board of Trustees of Montgomery Community College" did not justify dismissal of plaintiff's claim against the board based on a failure to exhaust administrative remedies. *Id.* at 460. It characterized as "hypertechnical" the error of naming Montgomery Community College instead of its Board of Trustees. *Id.* at 460. As to the president of the college, the Court stated that suit may proceed against him because he was "being sued by Alvarado *only in his official capacity*." *Id.* at 461 (emphasis added). Accordingly, the Court allowed suit to proceed against the college president and the Board of Trustees. *Id.*

In *Causey*, 162 F.3d 795, an employee of the Baltimore Department of Public Works filed two charges of discrimination against the City of Baltimore. *Id.* at 799-800. After the EEOC dismissed the charges, the plaintiff filed suit in federal court. *Id.* at 800. The complaint named as defendants the Mayor of Baltimore, the City Council, the Board of Estimates, and several City employees, including the plaintiff's supervisor, in their individual and official capacities. *Id*. at 799-800. The Fourth Circuit stated that plaintiff's "EEO charge failed to put the individual defendants on notice that they were potentially subject to *personal liability* for the alleged violations," because they were not named in the charge. Therefore, the Court concluded that "the individual defendants may not be held *personally liable* for any alleged violations of Title VII . . . ." *Id*. at 800-01 (emphasis added). However, the Court assumed, without deciding, that the individual defendants could be sued in their representative capacities. *Id.* at 801 n.1 (citing *Alvarado*, 848 F.2d at 460-61). And, the Fourth Circuit affirmed the district court's order, granting summary judgment to the defendants on the merits. *Id.* at 804-05.

In *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F. Supp. 1495 (E.D. Va. 1996), the Court concluded that the entity named in the EEOC complaint and the unnamed defendant had the requisite "substantial identity" because plaintiff had alleged facts suggesting the two entities were "under common control, including specifically that the same persons exercised control over employment decisions" at both entities. *Id.* at 1498. Conversely, in *Carter v. CPC Logistics, Inc.*, No. CV 3:12-3637-MBS, 2015 WL 5834136 (D.S.C. Sept. 30, 2015), *aff'd*, 642 F. App'x 266 (4th Cir. 2016), the district court found no substantial identity where plaintiff alleged only that the unnamed defendant "had significant control over the way [plaintiff] performed his job" and did not assert that the entities "share[d] management or directors or that they [were] liable for each other's debts." *Id.* at *8.

To be sure, the County and the State are separate governmental entities. But, plaintiff has alleged facts indicating that the County may exercise some control over the OSA's employment decisions. *See* ECF 14, ¶ 25. Further, unlike the unnamed defendant in *Carter*, Anne Arundel County is responsible for the debts of the entity named in the Charge, *i.e.*, the OSA of Anne Arundel County. *See* C.P. § 15-407(b). Additionally, the first and fourth factors support a finding of substantial identity. Marshall alleges that she submitted her employment application to the County and enrolled in the County's retirement plan and healthcare benefits plan. *Id.* ¶¶ 26-29. Additionally, she claims that the County issued her a W-2 and paid her salary. *Id.* ¶¶ 30-31. As a consequence, the relationship between the County, the State of Maryland, and the OSA is not easily ascertainable.

Aggrieved employees are not expected to comb through state and local statutes and to pour through case law just to file an EEOC complaint. Therefore, in light of plaintiff's allegations and

the "liberality" with which "EEOC charges must be construed," the County's arguments are unavailing at this early stage. *Alvarado*, 848 F.2d at 460.

It remains unclear whether plaintiff will establish a substantial identity between the County and the OSA, and the County may, of course, raise this issue again at summary judgment.

## C. Timely Filing

The County asserts that Marshall's Amended Complaint was not timely filed because it did not receive notice of the original Complaint. ECF 15 at 14-15. In response, Marshall contends that her notice to the OSA sufficed because the County and the OSA are essentially the same party. ECF 17 at 7.

The ADA, the ADEA, and the MFEPA, like Title VII, require that a plaintiff commence a court action within ninety days of receipt of his or her right to sue notice from the EEOC. *See* 42 U.S.C. § 12117 (ADA); 42 U.S.C. § 2000e-5 (Title VII); 29 U.S.C. § 626(e). The ninety-day period begins to run on the date that a claimant receives the requisite notice. *See*, *e.g.*, *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) ("Miss Davis received the right to sue letter on the second EEOC charge (disability, etc.) on October 1, 1996. Thus, the 90 day statute of limitations began to run on October 1, 1996 and expired on December 30, 1996."); *Harvey v. City of New Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987) (finding ninety-day limitations period on suit under Title VII began to run on the day of receipt of a right-to-sue letter from the EEOC); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010) ("[T]he 90-day [limitations] period begins on the date the claimant receives the right-to-sue letter.").

"The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable

tolling.'" *Laber v. Harvey*, 438 F.3d 404, 429 n. 25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (affirming application of equitable tolling to ADA's ninety-day filing requirement); *see also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (finding Title VII plaintiff's failure to file suit within ninety days did not warrant equitable tolling); *cf. Stewart v. Iancu*, 912 F.3d 693, 701 (4th Cir. 2019) (concluding that Title VII's waiting period of 180 days is not jurisdictional).

Under certain circumstances, a court must treat an amended complaint as if it were filed on the date of the initial complaint. This convention is known as "relation back." *See* Fed. R. Civ. P. 15(c). If the amendment relates back, it should be allowed under Fed. R. Civ. P. 15(a). If it does not, the claims against the new defendants are barred, as untimely.

Under Rule 15(C)(1)(c), an amendment that "changes the party or the naming of the party" to a suit relates back "to the date of the original pleading," if:

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

In other words, for an amended suit to relate back, three requirements must be met. First, Rule 15(c)(1)(B) must be satisfied. *See* Fed. R. Civ. P. 15(c)(1)(C). Rule 15(c)(1)(B) requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Second, the defendant must have received notice of the action within the period provided by Rule 4(m), such that it will not be prejudiced in defending itself on the merits. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). Rule 4(m) provides for service on a defendant within 90 days after the complaint was filed. Third, it is required that the defendant "knew or

should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii).

In *Krupski*, 560 U.S. 538, the plaintiff was injured on a cruise ship. Her ticket was issued by Costa Cruise Lines ("Costa"), the original defendant, but the ticket identified Costa Crociere S.p.A. ("Crociere") as the carrier, and required notice to the carrier. Suit was timely filed against Costa. After limitations expired, the plaintiff was granted leave to amend to add Crociere as a defendant. But, the district court and the Eleventh Circuit concluded that, under Fed. R. Civ. P. 15(c), the amendment did not relate back to the date of the timely filed complaint under Rule 15(c). The Supreme Court reversed.

The Supreme Court made clear that any focus on the plaintiff's knowledge as to the proper defendant was "the wrong starting point." 560 U.S. at 548. It said, *id.*: "The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere . . . but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error." The Court added, *id.*: "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.[]" (Emphasis in original). Moreover, the Court observed that "it would be error to conflate knowledge of a party's existence with the absence of mistake." *Id.*

In addition, the Court reasoned that Rule 15(c)(1)(C)(ii) is not met when "the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity." *Id.* at 552. Notably, "the amending party's diligence" is not a factor. *Id.* at 553.

In *Krupski*, the two defendant entities were clearly related. And, the Court observed that the complaint "made clear" that the plaintiff "meant to sue the company that 'owned, operated, managed . . . and controlled' the ship . . . .", *i.e.*, Crociere, not Costa. *Id.* at 554 (citation omitted). Thus, the failure to name the proper party was a mistake. *Id.* at 556. In reaching its decision, the Court pointed to the "interrelationship" between the two defendants and the similarity of their names, which "heighten[ed] the expectation that Costa Crociere should suspect a mistake [was] made when Costa Cruise is named in a complaint that actually describes Costa Crociere's activities." *Id.*

Post-*Krupski*, I must ask what the County knew or should have known prior to the expiration of the 90-day period. As discussed, *supra*, plaintiff alleges several facts suggesting a close relationship between the County and the OSA. These allegations suffice for Rule 15 at this stage. Nevertheless, the County may challenge the timeliness of the suit again at summary judgment.

The affidavit of Andrea Rhodes, the former Personnel Officer for the County, is curious, although it plays no part in my decision. *See* ECF 15-2. She attests that the County Office of Personnel did not receive from the EEOC or the MCCR notice that Marshall had filed a charge. *Id.* ¶ 9. She further states that her office did not receive a copy of Marshall's Notice of Right to Sue from the Department of Justice. *Id.* But, she does not deny that the County knew that Marshall had filed a charge or received a notice of right to sue. And, of particular note here, she does not deny that the County knew Marshall had filed suit. *Id.* Further, Marshall addressed her summons (ECF 3) to the Anne Arundel County Office of Law.

## V.     Conclusion

For the reasons stated above, I shall DENY the Motion.  An Order follows, consistent with this Memorandum Opinion.

Date:   February 12, 2019

_____/s/_____
Ellen Lipton Hollander
United States District Judge