**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **PATRICIA MARSHALL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. SAG-18-0074 |
| | * | |
| **ANNE ARUNDEL COUNTY, MARYLAND** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Patricia Marshall ("Plaintiff") filed a Second Amended Complaint against Anne Arundel County, Maryland ("the County"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Maryland's Fair Employment Practices Act, Md. Code, State Gov't § 20-601, *et seq.* ("FEPA"). ECF 14. Discovery is now concluded, and the County has filed a Motion for Summary Judgment ("the Motion"). ECF 37. I have reviewed the Motion, along with Plaintiff's Opposition, and the County's Reply. ECF 51, 52. On March 16, 2020, Plaintiff filed a Motion for Leave to File a Surreply, ECF 53, which Defendants opposed, ECF 54. No hearing is necessary for either motion. *See* Loc. R. 105.6 (D. Md. 2018). Initially, Plaintiff's Motion for Leave to file a Surreply will be granted, because the arguments made in the Surreply do not change the Court's view of the County's Motion. As to the County's Motion, for the reasons that follow, the Motion will be granted.

**I.      FACTUAL BACKGROUND**

The facts are viewed in the light most favorable to Plaintiff, the non-moving party. Plaintiff worked for many years as a victim-witness coordinator for the Prince George's County

State's Attorney's Office. ECF 37-2 at 11:12-12:15. During her tenure in that office, she interacted with, and befriended, Wes Adams. *Id.* at 13:15-20, 15:20-16:1. Plaintiff subsequently worked on Adams's campaign for State's Attorney in Anne Arundel County. *Id.* at 16:6-15, 16:20-21. Adams prevailed in the election, and later offered Plaintiff an opportunity to work as a victim witness advocate in his State's Attorney's Office ("the SAO"). *Id.* at 28:4-15. Plaintiff provided her resume to Adams, and then met with Heather Amador and Pamela Brewer in the SAO. *Id.* at 30:8-10; 32:14-19; 33:12-21; 37:21-38:18. Brewer gave Plaintiff the "Anne Arundel County State's Attorney's Office Pre-Employment Questionnaire," and Plaintiff hand-wrote her responses. *Id.* at 42:2-21; ECF 37-5. Adams signed the questionnaire several days later. ECF 37-5. Plaintiff did not interview, in any formal sense, for the victim witness advocate position, other than the meeting with Amador. ECF 37-2 at 44:11-45:3.

Adams hired Plaintiff, as an at-will employee, in April, 2015. *Id.* at 45:4-9, 45:16-21, 63:20-64:1. Plaintiff did not have a formal orientation. *Id.* at 64:2-4. Her substantive job training was conducted by SAO employees, although she received training from the County as to the use of her computers and phone. *Id.* at 68:3-69:20, 80:2-83:1; ECF 37-24, ¶ 5. Throughout her employment, Plaintiff received her pay from the County, and her retirement and other employment benefits were provided by the County. ECF 37-2 at 64:4-65:3; ECF 51-12. Plaintiff sent her leave slips and medical leave requests to her direct supervisors in the SAO, and understood that they were responsible for approving them. ECF 37-2 at 86:5-87:7. The SAO sometimes requested information or conferred with the County on certain personnel issues. ECF 51-5 at 46:12-22.

When Plaintiff started in the SAO, her direct supervisor was Heather Amador, the SAO's director of victim witness advocates. ECF 51-5 at 33:7-9; ECF 37-2 at 55:6-9. Her second-level

supervisor was Michael Bergeson, an attorney in the SAO who served as head of the juvenile unit in Circuit Court. *Id.* at 58:14-59:3. Plaintiff began having performance issues, which resulted in her supervisors meeting with her on December 30, 2015 to discuss ways to improve. ECF 37-13. Specifically, she was having difficulty with attendance and punctuality, resulting in a requirement that she email her supervisors each day upon arrival. *Id.* She also admitted that she was "not cover[ing] her fair share of screening." *Id.*

In December, 2015, Amador transferred Plaintiff to serve as a victim witness advocate in District Court, where her second-level supervisor was Aaron Meyers, the chief of District Court. ECF 37-2 at 62:6-20. Amador remained Plaintiff's direct supervisor. *Id.* at 62:13-15. Plaintiff's performance issues continued in her new position. *Id.* at 133:15-134:20; ECF 37-4 at 50:9-19; ECF 37-14.

On or about March 30, 2016, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 38 at 104:9-15. She texted Amador about her medical condition, and was advised not to worry about work. ECF 37-9 at 1-2. Plaintiff returned to work on April 4, 2016, told Amador she was "happy to be back to work and feeling better," and did not request any change to her assigned position as a result of her medical condition. *Id.* at 5. In fact, Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 44.

On August 23, 2016, Amador, Meyers, Pattinson, and another SAO supervisor, Jonathan Church, met with Plaintiff to discuss her continuing performance issues. ECF 37-14. During that meeting, Plaintiff discussed ▮▮▮▮▮, but insisted that she was able to perform her work, and declined ▮▮▮▮▮▮▮▮▮▮▮▮. ECF 51-5 at 61:11-62:3. The supervisors asked Plaintiff to make improvements during a sixty-day probationary period. *Id.* at 52:2-14.

3

However, shortly after the August 23, 2016 meeting, Pattinson discussed Plaintiff's performance issues with the State's Attorney, Adams. ECF 57-4 at 56:4-57:3. During this meeting, Adams "said he wanted Ms. Marshall to be successful and, if we didn't think that she could be successful and if [Pattinson] felt that this was somewhat setting [Marshall] up for failure, then we should revise our decision" to place Marshall on a sixty-day probation. *Id.* at 56:4-10, 56:21-57:3.

On September 9, 2016, Meyers, and Pattinson met with Plaintiff to discuss their concerns. ECF 37-15. Plaintiff did not make a request for accommodation at the meeting. *Id.*; ECF 37-2 at 150:4-8. Ultimately, Plaintiff was informed that a decision had been made to end her probationary period, and that her employment as a victim witness advocate would be terminated. ECF 37-15. However, Adams would be offering Plaintiff a position as a receptionist in the SAO through the end of 2016. ECF 37-15; *see also* ECF 37-16. Three days after the meeting, Plaintiff texted Adams, and wrote:

> I have been very grateful to you and for this job and I have been a dedicated employee. . . . I am very sorry about the job not working out. I have tried my very best and worked hard. But they said I am not a right fit. Also I want to thank you very much for giving me until December 31st to find another job. That is extremely kind of you.

ECF 37-18. During a follow-up meeting the next day, on September 13, 2016, Adams confirmed that he had decided to terminate Plaintiff's employment, and told Plaintiff that terminating her was "probably the single toughest decision he had ever had to make." ECF 37-2 at 152:8-153:8; ECF 37-16.

On or about October 7, 2016, Plaintiff called the County Office of Personnel, and spoke to Nate Barker. ECF 51-8 at 3. Plaintiff told Barker that management was discriminating against her by failing to accommodate her disabilities. *Id.*; ECF 51-1, ¶ 5. An email exchange

with Barker ensued, and he provided her with some general information about her rights and her options for filing a complaint. ECF 51-8; ECF 51-1 at 6.

On October 27, 2016, more than a month after she was informed of her termination, Plaintiff submitted a letter from her primary care physician, Dr. Kimberly Larsen, to Pattinson as the Director of Operations at the SAO. ECF 37-11. Dr. Larson wrote:



*Id.*

Ultimately, the SAO offered Plaintiff the opportunity to remain in the receptionist position until January 11, 2017. ECF 37-19. During her tenure as receptionist, Plaintiff applied for two jobs with the County, one in the Department of Aging, and another in the Department of Detention Facilities, using the County's online job application process. ECF 37-2 at 189:7-190:21, 192:12-193:12. In those applications, Plaintiff stated that she was a current County employee. ECF 51-9 at 2, 4, 6.

On November 30, 2016, Plaintiff filed a charge of discrimination and retaliation with the Maryland Commission on Civil Rights ("MCCR"), which was also transmitted to the United States Equal Employment Opportunity Commission ("EEOC"). ECF 48; ECF 37-21. The charge named only the SAO as Plaintiff's employer. ECF 48. On or about January 10, 2017, the EEOC sent the Notice of Charge of Discrimination to Pattinson at the SAO. ECF 51-1, ¶ 4. Pattinson did not notify the County of the Charge. ECF 51-5 at 140:2-7. Pattinson believes that "at some stage," the County's Office of Law "was aware of what was going on," but she does not

know who notified them, or when.  *Id.* at 141:4-142:7.  The Maryland's Attorney General's Office represented the SAO in the EEOC proceeding, not the County.[1]  *See* MD. Code Ann., State Gov't. § 6-106.

Andrea Rhodes, the County's Personnel Officer, who received any administrative charges filed by County Employees in the EEOC or the MCCR, did not receive a copy of any administrative charge filed by Plaintiff, or any notice that such a charge had been filed.  ECF 37-6, ¶¶ 9-10.  The County was not invited to participate in any administrative proceedings, and only learned of Plaintiff's discrimination charges when it was served with the First Amended Complaint in this case.  *Id.* ¶¶ 10-13.

On August 29, 2017, Plaintiff received a 90-day "Right to Sue" notice from the EEOC, advising that the EEOC would take no further action regarding her ADEA claim.  ECF 37-22.  The EEOC's notice was sent to Pattinson at the SAO, but not to the County.  *Id.*  Similarly, on October 12, 2017, the U.S. Department of Justice issued a "right to Sue" notice with respect to Plaintiff's ADA and Rehabilitation Act claims.  ECF 37-23.  Again, the notice was sent to Plaintiff and the SAO, but not to the County.  *Id.*

Plaintiff initiated the instant suit on January 9, 2018.  ECF 1.  Her original Complaint named Adams, Meyers, Pattison, and the Anne Arundel County State's Attorney's Office as Defendants.  *Id.*  After obtaining counsel, ECF 4, Plaintiff filed an Amended Complaint on March 14, 2018, naming only "Anne Arundel County Government" as Defendant, ECF 7.  Plaintiff thereafter obtained leave to file a Second Amended Complaint, which named "Anne Arundel County, Maryland" as Defendant.  ECF 14; *see* ECF 13.  On May 11, 2018, the County filed a motion to dismiss the Second Amended Complaint for failure to state a claim.  ECF 15.

---

[1] In fact, the Maryland Attorney General's Office also represented Pattinson, as a former SAO employee, at her deposition in this case.  ECF 52-2 at 4:1-9, 142:8:13.

On February 12, 2019, United States District Judge Ellen L. Hollander denied the motion to dismiss, determining that the Second Amended Complaint plausibly stated a claim against the County. ECF 19 at 14-18.

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine

issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III.   ANALYSIS

Plaintiff's Opposition couches the County's Motion as an attempt "to relitigate the legal issues previously determined by Judge Hollander denying Defendant's Motion to Dismiss." ECF 51 at 1. Plaintiff's position disregards the significant change in standards applied to a motion to dismiss, versus a motion for summary judgment. Judge Hollander's opinion only found that "the [Second Amended Complaint] allows at least a plausible inference that the County was plaintiff's joint employer." ECF 19 at 18. In fact, with regard to whether Plaintiff had properly exhausted her remedies against the County, Judge Hollander noted, "It remains unclear whether plaintiff will establish a substantial identity between the County and the [SAO], and the County may, of course, raise this issue again at summary judgment." *Id.* at 24. Thus, the County does not seek to relitigate issues Judge Hollander already decided, but appropriately seeks to apply the summary judgment legal standards to the facts adduced by the parties in discovery. *See also, e.g.*, *Ugbo v. All. Legal Grp., P.L.L.C.*, No. 2:15cv151, 2016 WL 9776593, at *1 (E.D. Va. Oct. 26, 2016) ("[A] motion to dismiss is subject to a different standard of review than a motion for summary judgment and, contrary to Plaintiff's argument, the denial of a motion to dismiss does not entitle a party to summary judgment.").

Under the more exacting summary judgment standards, Plaintiff did not properly exhaust her administrative remedies against the County. Each statute under which Plaintiff seeks relief requires such exhaustion, before a plaintiff can file a lawsuit against a defendant in federal court. *See, e.g.*, *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (Title VII); *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (ADA); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009) (ADEA), *abrogated on other grounds*, *Fort Bend County v. Davis*, __ U.S. __, 139 S. Ct. 1843 (2019); *Johnson v. United Parcel Serv., Inc.,* Civil No. RDB-14-4003, 2015 WL 4040419, at *6 (D. Md. June 30, 2015) (MFEPA).[2] The exhaustion procedures for each statute essentially parallel those described in Title VII of the Civil Rights Act of 1964. *See, e.g.*, 29 U.S.C. § 626(d)(1) (ADEA); *Sydnor,* 681 F.3d at 593 (ADA); *Davidson v. Sarnova, Inc.*, No. JKB-170-1067, 2017 WL 3581999, at *2-3 (D. Md. Aug. 18, 2017) (MFEPA). While the Supreme Court has recently clarified that the exhaustion requirement is not jurisdictional, but merely procedural, *Davis*, __ U.S. at __, 139 S. Ct. at 1850-51, it nonetheless remains clear that "[a]n individual cannot bring suit until he has exhausted the administrative process," *e.g.*, *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).[3]

The purpose of the exhaustion requirement is to "ensure[] that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). In particular, the requirement of administrative

---

[2] Alternatively, Plaintiff concedes that her ADEA claim is untimely, and subject to an entry of summary judgment against her. ECF 51 at 1 n.1.

[3] A natural consequence of the Supreme Court's holding in *Davis*, as has been recognized in other circuits, is that, if not timely raised, a defendant-employer can waive the argument that the plaintiff-employee failed to exhaust her administrative remedies. *E.g.*, *Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2000). Waiver does not apply here, though, for the County raised the issue at the Rule 12(b)(6) stage, *see* ECF 15-1 at 10-14, and asserted it as an affirmative defense in its Answer, ECF 22 at 8 (Defense Nos. 8, 10).

exhaustion "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) (quoting *Chris v. Tenet,* 221 F.3d 648, 653 (4th Cir. 2000)).

Clearly, an entity not named in the administrative charge, and not provided with notice of the charge or the proceedings, cannot participate in the administrative conciliation processes. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.,* 848 F.2d 457, 458 (4th Cir. 1988) (explaining that the naming requirement "notifies the charged party of the asserted violation" and "brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law" (citation omitted)).  Thus, in ordinary circumstances, subsequent suit can be brought "only 'against the respondent named in the [administrative] charge.'" *Id.* at 458 (quoting 42 U.S.C. § 2000e-5(f)(1)).  However, in light of the liberal construction afforded to EEOC charges, certain exceptions have been made to the naming requirement. *Id.* at 460-61; *see also Causey v. Balog*, 162 F.3d 795, 800 n.1 (4th Cir. 1998).

Although the Fourth Circuit has not formally adopted the test, other Courts within the circuit have employed the "substantial identity" test to assess whether a civil action can fairly be brought against a defendant other than the one named in the EEOC charge. *See, e.g.*, *Elzey v. Wal-Mart Assocs., Inc.,* Civil No. RDB-11-2151, 2012 WL 3715321, at *3 (D. Md. Aug. 28, 2012); *see also Alvarado*, 848 F.2d at 461 (noting that the Fourth Circuit previously quoted, with approval, the "substantial identity" test, albeit in dictum (citing *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981))).  Essentially, the substantial identity test looks at four factors:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and]

4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Vanguard Justice Soc'y Inc. v. Hughes,* 471 F. Supp. 670, 688 (D. Md. 1979) (quoting *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir. 1977)). The second and third factors have been described as "the most important as they are most reflective of the two-fold purpose of the naming requirement." *Crosten v. Kamauf,* 932 F. Supp. 676, 682 (D. Md. 1996).

Case law is instructive as to the appropriate application of the *Vanguard Justice* factors. In some cases, courts have found unnamed parties to have sufficient "substantial identity" with the party named in the administrative proceedings to be subject to suit. However, the three cases cited by Plaintiff are readily distinguishable from this case. In *Lewis v. Livingston County Center for Nursing & Rehabilitation*, 30 F. Supp. 3d 196, 206-07 (W.D.N.Y. 2014), the Court denied a motion to dismiss a complaint against Livingston County, when the sole entity named in the EEOC charge had been "the Livingston County Center for Nursing and Rehabilitation" ("Livingston County CNR"). "Based on the limited information" before it, the court found that because Livingston County CNR was a department created by Livingston County, it was plausible that Livingston County CNR had a sufficient "identity of interest" with Livingston County. *Id.* at 206. The court therefore denied the motion to dismiss, although, as in this case, noted that it "may revisit the issue on a motion for summary judgment." *Id.* at 206-07. *Lewis* is

11

inapposite because, as described below, in this case, the SAO is not a department created by Anne Arundel County.

Second, Plaintiff cites *Brown v. Scotland County*, Civil No. 1:01CV00936, 2003 WL 21418099 (M.D.N.C. June 17, 2003).  In that case, the plaintiff named the Scotland County Sheriff's Department, but not Scotland County itself, in the EEOC charges.  *Id.* at 9.  In denying to dismiss the claims against Scotland County, the court reasoned, "More importantly, when plaintiff's charges were filed with the EEOC, Sauer, the County attorney, and the County's Board of Commissioners not only involved themselves in the conciliation process with the EEOC, but appeared to have controlled it."  *Id.*  The court found that it was "clear that the handling of the case was directed by the County through the Board of Commissioners and County Attorney."  *Id.*  The situation in the instant case could not be more different, as the Maryland Attorney General's Office represented the SAO in the administrative process, without any input from the County.

Finally, Plaintiff cites *Thomas v. North Carolina*, Civil No. 3:12-cv-0038-W, 2012 WL 3257796, at *2 (W.D.N.C. Aug. 8, 2012).  Without stating any express rationale, the Court determined that although the plaintiff had only named the "Orange County Department of Social Services" in her EEOC charge, "Orange County Government remains a defendant because there exists a sufficient identity of interests between it and the named defendant."  *Id.*[4]  The clear implication is that, like in *Lewis* and unlike in this case, the named Orange County Department of Social Services was a department of the unnamed Orange County Government.

The instant case is far more similar to a case cited by the County, *Kronk v. Carroll County*, Civil No. L-11-0277, 2012 WL 245059, at *4-5 (D. Md. Jan. 25, 2012).  In *Kronk,* the

---

[4] The Court subsequently vacated the portion of its Order that dismissed two other Defendants on exhaustion grounds.  *See* 2013 WL 566481, at *3 (W.D.N.C. Feb. 13, 2013).

plaintiff sued three defendants: Carroll County, the Sheriff's Department, and Sheriff Tregoning. *Id.* at *1. However, only the Sheriff's Department had been named as plaintiff's employer in his EEOC charge, and thus, "the Sheriff's Department was the focus of the EEOC's investigation and conciliation efforts." *Id.* at *2, *4. The Court rejected the plaintiff's contention that Carroll County was identical to the Sheriff's Department under the substantial identity test, noting, "The Sheriff's Department is not a branch or department of Carroll County. Rather, the Sheriff is an independently elected state constitutional officer." *Id.* at *5. The same analysis is applicable in the instant case, where the State's Attorney "is an independently elected state constitutional officer." *See id.*

Similarly, in *Elzey v. Wal-Mart Associates, Inc.*, Civil No. RDB-11-2151, 2012 WL 3715321, at *1 (D. Md. Aug. 28, 2012), the plaintiff worked at Sam's Club, which is owned by Wal-Mart. The Court found that even though the plaintiff's paychecks bore Wal-Mart's name, Wal-Mart could not be sued under the substantial identity test, because only Sam's Club had been named in the EEOC proceeding. *Id.* at *3. "In this case, Plaintiff does not allege that the Wal-Mart Defendants participated in the EEOC proceedings or that they had constructive knowledge of the charge. . . . As such, the purposes of the naming requirement were not met and Plaintiff has failed to exhaust his administrative remedies as to the Wal-Mart Defendants." *Id.*

Specifically, in applying the four *Vanguard Justice* factors to this case, it is evident that the result is the same as that reached in *Elzey* and *Kronk*. The first factor, whether the role of the unnamed party could have been ascertained by the complainant at the time of filing of the EEOC complaint, weighs squarely in favor of the County. Plaintiff knew throughout her employment that the County had paid her salary and provided her benefits. Moreover, by the time she filed her administrative charge, she had been in contact with Nate Barker at the County about her

allegations of discrimination. Thus, she readily could have named the County in her EEOC charge as her employer, or as one of her employers, if she intended to assert a claim for discrimination against it.

Turning to the second factor, the interests of the SAO, as the named party, and the County, as the unnamed party, are entirely different. The Maryland Constitution explains that the Office of the State's Attorney is separate and distinct from the County in which it serves. *See* Md. CONST. art. V, §§ 7, 9. The voters of each County (and the City of Baltimore) elect a State's Attorney, *id.* art. V, § 7, but that elected individual serves as a state, not a local, officer, *Valle v. Pressman*, 229 Md. 591, 599 (1962) (per curiam). Indeed, the Maryland's Attorney General has confirmed, "[T]he State's Attorney's Office is a State entity, not part of Baltimore City government." 81 Md. Op. Att'y Gen. 232, 235 (1996). The Anne Arundel County Code specifically lists eleven offices and seven departments within its executive branch, but does not include the SAO. *See* Anne Arundel Cty. Code, § 2-1-103(a)–(b) (2020). Instead, the Code identifies the SAO as a "County-funded State agency" that is "not assigned to the executive Branch." *Id*. § 2-1-103(d).[5] Further, the Maryland Tort Claims Act defines "State Personnel" as "a State's Attorney of a County or Baltimore City, or an employee of an office of a State's Attorney." Md. Code Ann., State Gov't , § 12-101(a)(8); *see also* Md. Code Ann., Gen. Provis. § 5-101(*ll*)(5) (including "a State's Attorney" in the definition of a "State official"). Thus, it is clear that the SAO is a separate and distinct constitutional office, not an arm or branch of the County. In fact, the SAO was represented throughout the administrative process by the Maryland Attorney General's Office, not by County attorneys. The Attorney General's Office

---

[5] The relevant code provisions can be accessed at http://library.amlegal.com/nxt/gateway.dll/Maryland/annearundelco_md/article2branchesofcountygovernment/title1executivebranch?f=templates$fn=default.htm$3.0$vid=amlegal:annearundelco_md.

even continued to represent employees of the SAO during discovery in this case. *See, e.g.*, ECF 52 at 142:8-13 (Pattison testifying that the Attorney General's Office was representing her, not the County's attorney).

Further, Plaintiff's argument that the second factor weighs in her favor because the County paid Plaintiff's wages and benefits, and submitted federal grant requests to fund some SAO positions is unpersuasive. First, as previously discussed, just because an entity pays an employee's wages does not *ipso facto* satisfy the "substantial identity" test. *See Elzey*, 2012 WL 3715321, at *3. Second, it does not appear that the County's grant applications have the significance that Plaintiff attempts to ascribe to them, as Amador herself signed off a the "Person Completing the Project Narrative," ECF 51-4 at 19, and Adams is listed as the "Civil rights contact person," *id.* at 23. The County only appears to have signed off on the request as the "sub-recipient," with the SAO listed as the "implementing agency," and the State of Maryland also needing to approve the application. *Id.* at 2, 7. Still, this alone is insufficient outweigh the fact that the SAO is a separate and distinct constitutional office, *see Kronk*, 2012 WL 245059, at *4-5. The interests of the County, and those of the SAO and the State, therefore did not align. The County had an independent interest in defending itself from Plaintiff's charges of discrimination, and argue, as it forcefully does here, that was not a "joint employer" of Plaintiff, and therefore not liable for any of Adams's alleged discriminatory acts. Because it was not named in Plaintiff's administrative charges, however, the County did not have an opportunity to vindicate that interest.

Under the third factor, actual prejudice resulted to the County, because it had no chance to participate in the administrative proceedings. Plaintiff adduces no evidence that the County knew of the administrative proceedings during their pendency. To show that the County had

constructive notice of her EEOC complaints, Plaintiff first relies on Pattison's deposition testimony, in which she stated that she was "aware" that "at some stage[,] the [C]ounty Office of Law was aware of what was going on. I don't know exactly how we got to that point. I don't recall or I don't know – I certainly was not the person, I don't think, who made any of those calls." ECF 52 at 141:4-9. Pattison continued, "I don't actually know when any of this started, so the dates to me are – I don't know when the initial date of this is to know anything; so no, I don't know exactly." *Id.* at 142:4-7. This does not create a genuine issue of material fact, as Plaintiff contends, but rather comports with the sworn statements of both Rhodes and Adams. Rhodes's Affidavit establishes that the County did not know of Plaintiff's administrative charge until the administrative proceedings were over and it received the First Amended Complaint in this action. ECF 37-6, ¶¶ 10-13. Adams further avers that he did not provide the County with any of Marshall's discrimination charges or right to sue notices, and was "unaware of any SAO employee" who did so. ECF 52-3, ¶ 5. Adams also confirms that during his tenure, "the SAO handled and processed any accommodation requests from SAO employees." *Id.* ¶ 6. While Barker was the one to provide Plaintiff with information about the County's harassment and discrimination policy, ECF 53-1, even reading the evidence in a light most favorable to Plaintiff, Pattison's testimony is insufficient for a reasonable factfinder to infer that the County received constructive notice that Marshall *actually* filed discrimination charges with the EEOC and MCCR. Instead, the only reasonable inference that can be drawn is that the County only knew about Marshall's charges of discrimination once the County was served with the First Amended Complaint in this case.

      Plaintiff next attempts to establish the County's constructive notice of her administrative proceedings through a hearsay statement allegedly made by Kemp Hammond, an attorney for the

County, in late December, 2017 or January, 2018. ECF 37-24, ¶¶ 9-12. Plaintiff alleges that Hammond told her that he would respond to Plaintiff's Public Information request for her personnel file, but that "the other case was being handled by the other office." *Id.* Plaintiff interpreted that statement to mean that the County (or at least Hammond) was aware of her EEOC charge. *Id.* However, she offers no evidence, other than her own speculation, to corroborate her interpretation. More importantly, the alleged statement by Hammond was made well after the conclusion of the administrative proceedings. *See* ECF 37-22 (August 29, 2017 right to sue letter); ECF 37-23 (October 12, 2017 right to sue letter). Thus, even if Hammond knew of the administrative proceedings as of December, 2017, there is no indication that Hammond's knowledge occurred early enough to permit the County's participation in the administrative conciliation process months earlier. Plaintiff's speculation about what Hammond referred to is insufficient to create a genuine issue of material fact at this stage. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) (explaining that the party opposing summary judgment "must produce '*specific facts*' showing that there is a genuine issue for trial," and that "wholly speculative assertions will not suffice"). Accordingly, the undisputed evidence shows that the County was deprived of notice and the opportunity to consider, through the conciliation process, whether the case could be resolved in a voluntary fashion. The third factor therefore weighs strongly in the County's favor.

Finally, the fourth factor is whether the unnamed party (here, the County) had in some way represented to the Complainant that its relationship with the Complainant was to be through the named party (the SAO). In contrast, the evidence reflects that Nate Barker told Plaintiff that if the non-discrimination policy had been violated, Plaintiff could submit a complaint to him. ECF 51-8 at 9 (Email from Barker to Plaintiff on October 18, 2016, stating, *inter alia*, "Should

you believe this policy has been violated and wish to file a complaint, please feel free to follow up with me so that we may set up an appointment or discuss further. . . . Further, if you secure representation and think it would be helpful for your attorney to speak with someone here, feel free to forward my contact info."). That representation suggests the exact opposite relationship as that required by the fourth factor: the County asked Plaintiff to submit any complaint she had to the County, not through an independent entity, the SAO. Thus, Barker's instruction demonstrates that the fourth factor also weighs in the County's favor.

In sum, Plaintiff bears the burden of proving that the "substantial identity" exception to the naming requirement applies, and she has failed to meet that burden at the summary judgment stage. By failing to name the County in her EEOC and MCCR discrimination charges, she has not exhausted her administrative remedies against the County, and her claims must be dismissed. Accordingly, summary judgment in the County's favor, as to each count of the Second Amended Complaint, is warranted.

## IV.  CONCLUSION

For the reasons set forth above, the County's Motion for Summary Judgment, ECF 37, will be GRANTED. A separate Order follows.

Dated:  April 22, 2020                                              /s/
                                                                    Stephanie A. Gallagher
                                                                    United States District Judge